IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| NATHAN HOLLAND, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 04-4009-CV-C-HFS |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This is a proceeding involving an application under Title XVI of the Social Security Act (the Act). 42 U.S.C.§§ 1381, et seq. Plaintiff Nathan Holland seeks review of the Commissioner's decision denying his application for supplemental security income benefits. Plaintiff's application was denied initially. Tr. 253, 269-73. Plaintiff appealed the denial to an administrative law judge (ALJ). After an administrative hearing, the ALJ issued his written decision on September 18, 2003, in which he determined that plaintiff was not "disabled" as defined in the Act. Tr. 15-23. The Appeals Council of the Social Security Administration denied plaintiff's request for review on March 2, 2004. Tr. 3-5. Accordingly, the decision of the ALJ now stands as the final decision of the Commissioner. Plaintiff's appeal is currently before this court pursuant to 42 U.S.C. § 1383(c)(3).

**I.    Factual Background**

The facts are fully presented in the parties' briefs and will thus be merely summarized here. On August 5, 2002, plaintiff filed an application for supplemental security income benefits. Tr. 276-77. Plaintiff alleged a disability onset date of September 17, 1999, due to a head injury, seizures,

stroke, headaches, neck pain and back pain. Tr. 291.

Plaintiff's Testimony

Plaintiff was born on July 18, 1959 and was 43 years old at the time of the hearing. Tr. 470. He completed 10 ½ years of school. Tr. 470. Plaintiff was last employed as a furniture mover about two years prior to the hearing. Tr. 471. He worked that job for 4 months until it became too physically strenuous because of his high blood pressure and back pain. Tr. 471, 474. Before the furniture moving job, he worked at Hardee's for about 2 weeks and at Burger King for about 3 weeks; he stopped working for both restaurants due to difficulties in being around and dealing with lots of people. Tr. 471, 473-74. Earlier, plaintiff worked as a horse caretaker for about 3 years; that job ended due to a head injury. Tr. 472-73. Prior to the horse caretaker job, he served in the United States Army for 4 years. Tr. 472.

About 20 years ago, plaintiff suffered a head injury after being hit in the back of the head during a robbery. Tr. 473. He was unconscious for about 5 days and was in intensive care for 2 weeks and in the hospital for 3 months. Tr. 484. With regard to the present effects of his head injury, plaintiff is "just not the same person," has a very low tolerance for stressful situations, and has trouble dealing with people. Tr. 483-84.

He suffers from depression, high blood pressure, and back problems. Tr. 474-75. In addition, plaintiff has had a history of seizures and takes medication for that every day.[1] Tr. 478. He has been receiving treatment for his health problems through the VA Hospital since 1996. Tr. 475-76. As part of his depression treatment, he sees a psychiatrist (John F. Patterson, M.D.) once a month and sees a behavioral counselor (Larry English, LPC) 4 times a month. Tr. 476. Plaintiff

---

[1]Plaintiff's seizures are traceable to his earlier head injury.

had been taking Buspirone and Citalopram for depression, but Dr. Patterson recently took him off those medications because they were not effective. Tr. 477. Plaintiff takes Galantamine to prevent seizures. Tr. 478. He had a serious grand mal seizure two years prior to the hearing and had three mild (petit mal) seizures in 2003. Tr. 479-80. He has to lie down during the mild seizures, which usually last 30 minutes to an hour. Tr. 480. Due to lower back problems, he cannot lift anything over 20 pounds. Tr. 481. Plaintiff has been hospitalized for depression (and apparently for drug and alcohol addiction, too). Tr. 481. He acknowledged that he has experienced various substance abuse problems, including past addictions to Vicodin and cocaine. Tr. 482.

Since separating from his wife, plaintiff has lived with friends and with his father. Tr. 484-85. Recently, he has been moving from one friend's house to the next, staying where he can; he helps out around the house by doing dishes and other chores. Tr. 485. He spends his time reading (newspapers and the Bible) and going to doctor's appointments; he occasionally listens to the radio and only rarely watches television. Tr. 486, 490. He does not drive because he is afraid of having a seizure. Tr. 486. Due to his lower back problem, he can walk for about 20 to 30 minutes before needing to sit down and sit for about 45 minutes before needing to get up. Tr. 486-87. He can lift a bag of groceries and carry a gallon of milk. Tr. 488.

As to substance use, plaintiff had 2 beers about a month ago. Tr. 491. The last time he was intoxicated was more than 2 years ago. Tr. 492.[2] He has used marijuana on occasion. Tr. 492. Four times a month, plaintiff meets with his behavioral counselor Mr. English to discuss his progress (as to depression and substance abuse), how he is dealing with his problems and how he is doing in

---

[2]Plaintiff also has Hepatitis C, which makes him feel tired and drowsy. Tr. 496. His primary care doctor is planning to treat plaintiff with Interferon, but he has to be off alcohol for 6 months before starting treatment. Tr. 496-97.

3

general. Tr. 492. Mr. English and his psychiatrist Dr. Patterson coordinate his care. Tr. 492-93. Plaintiff is not comfortable in big group settings with large crowds of people. Tr. 494. His depression has negatively impacted his social life. Tr. 495. He has very few friends; sometimes when a friend calls or comes for a visit, he won't answer the phone or open the door, preferring to be alone. Tr. 494-95. He has good days and bad days with his depression. Tr. 495. On bad days, he does not feel like doing anything or going anywhere and just stays in the house; this happens 1 or 2 days a week. Tr. 495.

## II.     Standard of Review

The scope of this court's review is defined by the Act, which provides that the Commissioner's decision is conclusive if supported by substantial evidence on the record as a whole. Jackson v. Bowen, 873 F.2d 1111, 1113 (8th Cir. 1989); Bates v. Chater, 54 F.3d 529, 531 (8th Cir. 1995); Frankl v. Shalala, 47 F.3d 935, 937 (8th Cir. 1995); Harris v. Shalala, 45 F.3d 1190, 1193 (8th Cir. 1995). While "more than a mere scintilla," substantial evidence is only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The court will evaluate the entire record, considering not only the evidence which supports the Commissioner's decision, but also that which fairly detracts from it. Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996); Johnson v. Shalala, 42 F.3d 448, 451 (8th Cir. 1994); Turley v. Sullivan, 939 F.2d 524, 528 (8th Cir. 1991). The court will not, however, reverse a decision simply because substantial evidence may support the opposite conclusion. Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995). The court must be satisfied that the ALJ performed his duty to fully and fairly evaluate all the evidence before him. Herbert v. Heckler, 783 F.2d 128, 130-31 (8th Cir. 1986).

**III.    Analysis**

The Social Security Administration has established a five-step sequential evaluation process for determining disability. 20 C.F.R. §§ 404.1520, 416.920. Step one requires a determination as to whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments as defined in 20 C.F.R. § 404.1520(c). If so, the ALJ should proceed to step three, which asks if the impairment or combination of impairments meets or equals one of a list of specific impairments set out in the regulations. 20 C.F.R. § 404.1520(d). If this requirement is met, the claimant is conclusively presumed disabled; if not, the ALJ should proceed to step four. At step four, the ALJ determines whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(e). If the claimant can perform such work, he is not disabled. If the claimant establishes that he is incapable of performing his past relevant work, the ALJ must show, at step five, that the claimant can perform other substantial gainful work that exists in the national economy. 20 C.F.R. § 1520(f).

In this case, the ALJ proceeded through all five steps and concluded that plaintiff was not eligible for supplemental security income benefits under the Act. He determined that plaintiff has the following medically determinable impairments:

> a history of poly substance abuse, a history of seizure disorder, mild dementia, borderline intellectual functioning, a ventral hernia and wrist, knee and back problems.

Tr. 18. The ALJ found that these impairments were severe within the meaning of the Regulations, but concluded that they did not meet the criteria set forth in the Listing of Impairments. Tr. 19; see 20 C.F.R. § 404, Subpart P, App. 1. Based on the testimony of a vocational expert, the ALJ further

found that plaintiff is unable to perform his past relevant work. Tr. 21. The ALJ determined, however, that plaintiff possesses the residual functional capacity to perform other work which exists in significant numbers in the economy, and thus is not disabled. Tr. 22.

Plaintiff raises one point of error. He claims that the ALJ erred in rejecting the joint opinion of plaintiff's treating psychiatrist and behavioral counselor, and accepting the opinion of a consultative examining psychologist.

### Treating Physician

As a general rule, a treating physician's opinion should be given substantial weight. Prince v. Bowen, 894 F.3d 283, 285 (8th Cir. 1990). The Social Security Regulations provide that a treating physician's opinion should be granted controlling weight if it is well-supported by medical evidence and is not inconsistent with the other substantial evidence in the record. Holstrom v. Massanari, 270 F.3d 715, 720 (8th Cir. 2001). An ALJ may discount the opinions of treating physicians where other medical assessments are supported by superior medical evidence. Hogan v. Apfel, 239 F.3d 958, 861 (8th Cir. 2001).

Here, the treating sources disagree with a consultative source as to plaintiff's nonexertional functional limitations, specifically, plaintiff's mental ability to do work. Plaintiff's treating psychiatrist is Dr. John F. Patterson, M.D. and his behavioral counselor is Larry English, LPC, an addiction specialist. The record reflects that Dr. Patterson has been treating plaintiff since at least early 2000; Mr. English has been counseling plaintiff since April 2002. Tr. 216, 381. Currently, plaintiff is seeing Dr. Patterson once a month and is seeing Mr. English 4 times a month.

On May 13, 2003, Dr. Patterson and Mr. English completed a Medical Assessment of Ability to Do Work-Related Activities (Mental). Tr. 383-84. In the category "Making Occupational Adjustments," they rated as "fair" plaintiff's abilities to follow rules, use judgment, and function independently; and rated as "poor or none" his abilities to relate to co-workers, deal with the public, interact with supervisors, deal with work stresses, and maintain attention/concentration. Tr. 383. Explaining the basis for the limitations, they opined: "Based on past incentive therapy work programs over the last two years, this patient's ability to hold a job and relate to people is non-existent to the point vocational rehabilitation has not been able to place him." Tr. 383. In the category "Making Performance Adjustments," they rated as "fair" plaintiff's ability to understand, remember and carry out simple job instructions, and rated as "poor or none" his ability to understand, remember and carry out detailed or complex job instructions. Tr. 384. Explaining the medical basis for the limitations, they opined: "Patient's short term memory has been affected by injury to his head and verified on MRI 6/9/2000 damage to the left temporal lobe." Tr. 384. In the category "Making Personal-Social Adjustments," they rated as "fair" plaintiff's abilities to behave in an emotionally stable manner and relate predictably in social situations, and rated as "poor or none" his ability to demonstrate reliability. Tr. 384. In explanation, they opined: "Patient's need to be constantly re-inforced and medicated for his emotional stability. Also his inability to get along in social and work settings while attempting voc rehab. Ongoing psychological treatment for major depression disorder." Tr. 384.

In discounting the limitations set out by Dr. Patterson and Mr. English in their Medical Assessment (Mental), that ALJ states that "[t]his level of extreme occupational dysfunction goes entirely unmentioned in the treatment records." Tr. 20. That conclusion is inaccurate. Some of the

7

limitations were attributed to plaintiff's major depression and head injury, which are well documented in the record. For example, Dr. Patterson and Mr. English attributed plaintiff's inability to understand, remember and carry out detailed or complex job instructions to short term memory loss as a result of his head injury, which damaged his left temporal lobe. Tr. 384. Treatment records reflect that an MRI revealed damage to plaintiff's left temporal lobe (a result of his head injury), that Dr. Patterson thought the left temporal lobe damage was affecting plaintiff's thought processes, and that plaintiff had complained of memory loss preventing him from holding a job. Tr. 226, 370, 368.

Dr. Patterson and Mr. English attribute many of plaintiff's limitations to poor results in incentive therapy work programs and vocational rehabilitation's inability to place him in a job. It is true that the treatment records do not reflect the work program and vocational rehabilitation failures. That is probably because the records relating to the work programs and vocational rehabilitation are not medical in nature. These records are no doubt important in determining whether plaintiff has the necessary mental abilities to do work-related activities,[3] but they were not included in the materials before the ALJ. The ALJ has a duty to fully and fairly develop the record. Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000). Under the circumstances, the ALJ should have requested and reviewed the work program and vocational rehabilitation records before making a disability determination. By simply disregarding the limitations set forth by Dr. Patterson and Mr. English without further investigation, the ALJ failed to fully and fairly develop the record on the issue of plaintiff's mental limitations on working.

The ALJ relies heavily on the opinion of consulting psychologist Russell M. Newton, Ph.D.,

---

[3] If a vocational rehabilitation program truly could not place plaintiff, it seems unlikely that he would have much success in getting a job without the assistance of such a program.

8

who conducted various psychological tests. In a January 3, 2000 consultative examination report, Dr. Newton's diagnostic impressions from the testing included polysubstance dependence, mild dementia, adjustment disorder (anxiety and depressed mood), and borderline intellectual functioning (Full Scale I.Q. of 75). Tr. 219. Based on plaintiff's differing moods during the testing, Dr. Newton opined that plaintiff had the ability to moderate unacceptable behaviors, such as being oppositional and passive-aggressive. Tr. 216. Ultimately, Dr. Newton concluded that plaintiff needed to contact vocational rehabilitation services or apply directly for employment; from this, the ALJ concluded that plaintiff was mentally capable of working. Tr. 219, 21.

The ALJ reliance on Dr. Newton's opinions to the exclusion of the opinions of Dr. Patterson and Mr. English is unjustified. Dr. Newton saw plaintiff on a one-time basis for a consultative exam that occurred more than 3 ½ years before the hearing on July 8, 2003. If Dr. Newton's conclusion that plaintiff was capable of working had been made closer in time to the hearing, or if it was supported by similar conclusions of other medical professionals, it might have been entitled to more weight. As for Dr. Newton's recommendation that plaintiff seek vocational rehabilitation, Dr. Patterson and Mr. English noted that vocational rehabilitation was unable to place plaintiff. Without reviewing the work program and vocational rehabilitation records, the ALJ was premature in determining whether plaintiff was mentally capable of working.

In sum, the court finds that the ALJ's determination that plaintiff had the mental ability to do work was not supported by substantial evidence on the record on the whole. Therefore, that determination was in error and should be reconsidered on remand.

### B. Other Points of Error

Although not raised by plaintiff, the court finds that the ALJ also erred in his construction

9

of the hypothetical posed to the vocational expert. Tr. 499. Because the ALJ accepted the conclusions of Dr. Newton and found that plaintiff's borderline intellectual functioning was a severe mental impairment, that impairment should have been included in the ALJ's hypothetical. See Hunt v. Massanari, 250 F.3d 622, 625 (8th Cir. 2001) ("A hypothetical question posed to the vocational expert is sufficient if it sets forth impairments supported by substantial evidence in the record and accepted as true by the ALJ."); Lucy v. Chater, 113 F.3d 905, 908 (8th Cir. 1997) ("We have previously concluded that borderline intellectual functioning, if supported by the record as it is here, is a significant nonexertional impairment that must be considered by a vocational expert."); Hinchey v. Shalala, 29 F.3d 428, 432 (8th Cir. 1994) ("Testimony based on hypothetical questions that do not encompass all relevant impairments cannot constitute substantial evidence to support the ALJ's decision."). The ALJ's failure to include borderline intellectual functioning in the hypothetical was error. Consequently, further proceedings are needed to determine the effect of plaintiff's borderline intellectual functioning. See Hunt, 250 F.3d at 626.

Additionally, the court notes that although the record is replete with references to plaintiff's diagnosis of and treatment for major depression, the ALJ did not include major depression among plaintiff's medically severe impairments at step two. The ALJ's opinion does not provide any rationale for the omission of this impairment. "An impairment can be considered 'non-severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Shafer v. Apfel, 2000 WL 33146935, at *10 (D. Kan. 2000) (citing Brown v. Bowen, 827 F.2d 311, 312 (8th Cir. 1987)). Major depression can hardly be classified as a "slight abnormality." Therefore, the omission of this impairment is another point of error warranting

10

remand.

On remand, the ALJ should fully and fairly develop the record on plaintiff's mental ability to do work. Specifically, the ALJ should request the records from the incentive therapy work programs and vocational rehabilitation cited in Dr. Patterson and Mr. English's May 13, 2003 Medical Assessment of Ability to Do Work-Related Activities (Mental). The ALJ should also request updated medical records from Dr. Patterson and Mr. English, and should make a new determination as to plaintiff's medically severe impairments. In addition, the ALJ should reformulate plaintiff's residual functional capacity. Finally, the ALJ is directed to consider vocational expert testimony addressing whether there are jobs existing in sufficient numbers in the economy that plaintiff can perform, given his borderline intellectual functioning and other accepted functional limitations.

## IV.     Conclusion

Based on the foregoing discussion, it is hereby

ORDERED that plaintiff's motion for summary judgment (ECF doc. 14) is GRANTED. The decision of the Commissioner is reversed and this case is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for reconsideration and further proceedings consistent with this order. The clerk is directed to enter judgment for plaintiff and against defendant.

/s/ Howard F. Sachs
HOWARD F. SACHS
UNITED STATES DISTRICT JUDGE

September  28 , 2005
Kansas City, Missouri